Case 14-1680, Planet Aid v. City of St. Johns, Michigan. Oral argument on 15 minutes per side. Ms. Masseran for the appellant. Good morning. Good morning. Good to see you again. Thank you so much. May it please the Court, Mary Masseran on behalf of the City of St. Johns, the defendant appellant. I would like to reserve four minutes for rebuttal. The City seeks a reversal of the District Court's preliminary injunction because the City's donation bin ordinance is a content-neutral, reasonable time, place, and manner restriction, not an outright ban, and thus strict scrutiny. The standard for preliminary injunction is really not at issue, and the focus in the lower court and on appeal is really on the prong dealing with the likelihood of success on the merits. And the key aspect that we believe requires a reversal and a lifting of the preliminary injunction is the Court's decision to use strict scrutiny in this case. Strict scrutiny does not apply to content-neutral ordinances, and there's abundant case law to that effect. But probably the closest case, an unpublished case, but a case from this circuit, nonetheless, with careful bench billboard versus the City of Covington, Kentucky. In that case, the Court was considering an ordinance governing sign placement on park benches, and that's very closely analogous here, where you have a physical object that has some speech aspect that falls within the ambit of the First Amendment. And the Court said in that case, a reasonable time, place, and manner regulation was okay, precisely because of that dual character. It's regulating the placement of items, and it's content-neutral as to the speech and the viewpoint. The opposing counsel in PlanetAid relies extensively on the Schoenberg line of cases, which we believe are distinguishable. Those cases dealt with solicitors seeking donations. It's an extension to apply that to donation bins. But even as... How about the Fifth Circuit case, the Texas for the Blind case versus Abbott? Yes. Is that distinguishable from our case? I think there's a couple things to say about that. It is not on all fours with this case in any way, because the regulation had all sorts of differentiations, whereas this regulation does not. But in the Abbott case, although the Court struck down aspects of the ordinance, it upheld aspects that required disclosure. So it did agree that some kinds of regulation were appropriate. Did the Fifth Circuit hold that it was subject to strict scrutiny? The Fifth Circuit applied a stricter scrutiny, it said. Oh, strict or stricter? Stricter. That's to my way of thinking. And I think Justice Breyer talked about this a little bit, and we quoted that in, I can't remember, our main or our category of speech where a very strict scrutiny is applied and where it's extremely difficult to hold up any kind of regulation. And at the other end, regulation of commercial speech, which gets relatively less protection and a kind of continuum. I think the Fifth Circuit said we're applying something more than the very lowest level, but I don't think it was applying the sort of strict scrutiny in the sense that strict means fatal. Did they apply the intermediate scrutiny, which you're advocating here? Right, intermediate scrutiny. So did the Fifth Circuit apply that? Well, I think it's ambiguous whether it's an intermediate scrutiny or the highest level. I read it to be a sort of intermediate. Would there be a conflict within the circuits if we adopted your position? And so my question is, would we create a conflict with the Fifth Circuit if we ruled in your favor? I don't believe it would be a conflict because of two reasons. One is, I do think that the language in the Fifth Circuit can be harmonized if you interpret it to mean that it's a form of stricter than commercial, but not necessarily strict in the highest sense. But secondly, and equally important, the regulations that were issued there are very different than the donation bin ordinance that's under consideration here. There they were regulating solicitors who were doing in-person solicitation. They were requiring, and they were also looking at the donation bins, but they were looking at differentiation between profit and non-profit and whether there was a third party profit-making entity sort of in the mix, and whether that needed to be disclosed. That's very different than the donation bin ordinance that the city has here, which is not making any kinds of differentiation on the basis. I'm struggling a little bit with that argument. In Bench Billboards, it was a content neutral because all comers, whatever you want to put on there. Here's an object, anyone. It's an issue with anyone who writes. In the bins here, it seems that this is a regulation of a subgroup, donation bins from charitable organizations. I'm struggling with why that isn't content-based because it relates to charities, but you don't regulate a recycling center or public trash bins, which cause exactly the same problem that you say you're regulating this for, and perhaps even more. The regulation is, we believe, content neutral. It's not limited to charitable donation bins. It's very specific. It defines donation bins, and I think this is really Because the donations is the wording that brings you to the charitable organization, so that a recycling center is not, because you're not donating. Is that your argument? Otherwise, how would you allow the recycling centers? I want to pull the exact language, if I can find it, without slowing us down. But I do not read, outdoor unattended receptacle designed with a door slot or other opening that is intended to accept donated goods or items. So it seems to me that's very broad in terms of the physical bin. And what it's saying is, when it's outdoor and when it's unattended, we have at least one example in the city. We have heard of examples in other cities, and certainly there's abundant discussion of these problems in the press in terms of attracting trash, attracting rodents, being an attractive nuisance for minors. Why doesn't that apply to a recycling center? You go to a recycling center and the cardboard bin is full, so people just throw their cardboard boxes beside it. How do you distinguish that to make it content neutral? The record doesn't give us any particulars about this outdoor recycling center. But what it says is, because they knew they had this center and they weren't sure whether it already had some bin or not, and that is an accessory use under land use, they included a grandfather clause. It would apply to any bin that is outdoor and unattended. It didn't apply here for the very simple reason that you removed the bin. This was a bin that was there before passage of this ordinance, and the only reason it was not grandfathered in was because it was removed. Am I missing something here? The bin was removed because it was an accessory use where there had never been approval for it, and that was a violation of the preexisting zoning law. That's not really an issue as far as the analysis of the First Amendment, but that is the history of it. My understanding was that the letter that went out expressed the same sort of concerns that resulted in the ordinance. That's correct. But you say that it was removed on a different regulatory basis? What I'm saying, Your Honor, is that the bin, the legal authority for the bin was that it was an accessory use, that is a structure on a property not related to the owners of the property and without any permit. The rationale that was included in the letter had to do with it creating a nuisance. Which was the same rationale for the passage of the ordinance? Correct. Correct. That's correct. We're talking about content neutral, but really the standard is content-based, is it not? Yes. If the regulation is content-based, then we apply stricter scrutiny. And here, if we get past your argument that a donation box is not necessarily limited to charitable donations, although I'm not sure what other kind of donations there would be other than charitable, but even though it is neutral as to the organizations, the ordinance, it doesn't specify one charitable organization is allowed, one is not, the content of banning charitable contributions. I mean, that's what we're looking at, isn't it? Rather than the neutrality as to charities, whether it is content-based and if it's... We would contend that the ordinance is not content-based, and in fact, it doesn't differentiate between profit-making and non-profit-making. That language, donated goods or items, is not intended to say if you're a profit-making owner of a donation bin, you're regulated, but if you're non-profit, you're regulated, but if you're profit, you're not. That's not what that language has been interpreted to mean. The purpose of the language was to say that donation bins that are accepting these items and are outdoor and are unattended, which is the circumstances under which these kinds of problems arise, are not going to be allowed. If the bin is attended, for instance, in a parking lot with a 24-hour attendant, or is not outdoors, is in a big store like a Meyers or something at the back, or in some other location, that would be permissible. The ordinance was drafted to deal with this specific problem, and it was intended to be not content-based and not viewpoint-based, but to be, across the board, targeted on this specific problem. If we applied stricter scrutiny, would you agree that there are ways to narrowly tailor the ordinance to solve the problems that the city is trying to eliminate? For instance, they could require these donation boxes to be picked up twice a week, or once a week, or supervised. They could do other things rather than totally prohibit donation boxes. Could they not? Opposing counsel has made this argument. There's lots of other ways. The city's position is, and I think it's correct, that the ordinance is targeted on this specific problem. Having this kind of regulation... There's no record of a problem here, right? It's kind of a speculative, hypothetical problem that maybe we'll have a problem, because maybe there was a city somewhere else that had a problem, but St. John's hasn't had this particular problem. St. John's has at least one instance of a problem, which is in the record, and was discussed when the ordinance was under consideration. As well, members of the council discussed problems that they were aware of in other cities, so I don't think it's correct to call it hypothetical or speculative. What about the approach of Alma and DeWitt townships that require the receptacles to be placed in the back of a building? That still leaves the same problem of people leaving items when the bin is full and attracting criminals or attracting children who can be climbing around on these and injure themselves, and those kinds of problems. I'm just struggling with the difference between that in a recycling center or the grandfathered-in Lions Club center. I'm just struggling with that. It seems to me that you can have something that is content-based but viewpoint-neutral, and that's what you have. And if you have a content-based regulation, then don't you have to satisfy strict scrutiny? I don't believe it's content-based, because it applies to donation bins regardless of whose they are. The recycling center and the Lions Club, there's nothing in the record to say they even have bins. What the record says is, we know we have these in town, and we're going to put this grandfather clause in properly so, because when a city regulates a use out of existence, it creates a number of land use problems. And the Supreme Court and this court and other courts have recognized that as a legitimate thing for a city to do in the area of land use. Does the record reflect that the Lions Club had the necessary permit? The record does not reflect anything in particular about the Lions Club, whether it even had bins. It just was an entity that was accepting goods. And it's very unclear whether it had bins or the Lions Club had bins, but in the discussion that the council had, they said, geez, we don't really know if this is going to apply, so we'll put a grandfather clause in, which it seems to me is a legitimate thing for the city to have done. Getting back to the content-neutral and content-based distinction, you brought up the park bench cases, but there's also the billboard cases. Now say you had a city ordinance that allowed billboards, but they did not allow any billboards on the subject of abortion, either pro-life or pro-choice. Would that be content-neutral, even though they don't pick a side, but they prohibit the entire subject? I think that's not content-neutral because it's regulating on the basis of the nature of the speech. And in this case, the ordinance does not regulate on the basis of the nature of the speech. And we get past your argument that these donation boxes apply, whether it's charitable giving or, I guess, other giving. Would it be subject to strict scrutiny, then? I don't believe that this ordinance is subject to strict scrutiny, no, because the ordinance applies to all donation bins. When it talks about charitable, that, in a sense, can mean you're giving items over as opposed to being paid for the items. It doesn't mean this is a profit-making or a non-profit-making owner, and there's nothing in the ordinance that would suggest that, nor in the minutes and the discussions of the city. The city was applying this ordinance targeted to the specific problem, which was outdoor unattended bins that attract refuse and garbage and create blight and property value problems and aesthetic problems in the community. You'll have your four minutes rebuttal. Any further questions at this time, Judge Steele? Thank you. Good morning. Good morning, and may it please the Court, Daniel Dalton on behalf of Planet Aid. Your Honor, the District Court properly determined that the City of St. John's Ordinance 618 is subject to strict scrutiny because the ordinance completely bans donation bins. We know it completely bans donation bins because throughout the discussion and the minutes and the record, the City of St. John's said the intent of this ordinance is to completely ban donation bins. We know it's true for completely ban because in the lower court, the City argued that the purpose of this ordinance is to completely ban donation bins, and that was in opposition to the TRO as well as to a motion to stay as well. On appeal, it's argued for the first time it's a partial ban, but the record is clear. It's a complete ban on donation bins. But there is the reason that we have another issue with this as well is there's a car vote for the Lions Club, and that's the grandfather clause where one donation is favored over other donations. The record is clear here as well is that Planet Aid looked at the ordinance. There was no ordinance covered in this particular issue. They got the property owner's consent, and they placed bins in two locations in the city. Was there a permit problem? There was no permit problem because there was no permit required under the particular ordinance. All that was required... The existing ordinance. Correct. There was no existing ordinance that required a permit. Did the letter or correspondence by email between Council for Planet Aid and the City indicate that there was a permit violation? The City of St. John's city attorney indicated that there was a violation of the zoning ordinance because the donation bins, according to the city attorney, was not a permitted use in that particular jurisdiction. And so what the city did is said, we think this is a nuisance. This is going to create a nuisance. And I think the record is very clear that it is speculation. There was nothing in the record that suggested that the City of St. John's had a problem with donation bins. But they said you have to remove them by a certain date. They weren't removed, and the city removed those bins. And that's really what is in the record. The ordinance completely bans this form of speech. And again, I believe that we all agree that this is speech, and it's charitable speech as well under the Schomburg decision. Where the Supreme Court implicitly in Schomburg says that the city can't do what they're doing here. In our sister circuit, in the Fifth Circuit, Abbott said, really, it's right on point. You can't ban these charitable bins the way it's been done in St. John's. As well as the Eighth Circuit and the district court in Link drop in that decision as well. Where the whole analysis of Schomburg and everything that followed through that talked about strict scrutiny and charitable donation bins. And that the court or the cities cannot completely ban these bins. Are you involved in the Ypsilanti case? Yes. And what's the status of that? That case, we voluntarily dismissed the case. What happened there is after the court made its ruling, we went back and met and tried to settle the case by saying, let's craft a new ordinance that everybody can agree and we can live on. Because the issue in Ypsilanti was a little bit different there. In Ypsilanti, there was individuals who were not getting property owners consent and just placing boxes down and whatnot. So we went back to the township of Ypsilanti and worked with them to craft a new ordinance. At the same time, there was a state law that was introduced by Senator Shoemaker that would have precluded municipalities to ban bins. So the township said, well, let's wait and see what happens to the state law and then we'll get back to it. Fast forward, nothing happened with the state law. It never got a hearing last year, so it died at the end of the session. The township has said to us, we'll let you keep your boxes where they're at. So we don't have an issue and the township has never revisited the issue of an ordinance. But what we've done, just kind of following up with that, is we went with other communities first with ordinances and said, let's work together to regulate this. And it's kind of like the dumpster analogy that was provided and talked about earlier. If there is an issue, let's talk about where we can put the donation bins, whether they need any type of approvals and things like that. In the city of Portage, for example, we've done that. And that Portage model has been used in Battle Creek and Ithaca and a couple other cities throughout Michigan as well as Indiana too. So there is a mechanism if there is an issue that it can be regulated. And here, the problem that the city portends to ban with these donation bins is even greater with dumpsters. And I think, Your Honor, you hit it right on the point. Dumpsters are open. You can climb into a dumpster. Dumpsters have construction debris and food and all sorts of things in there that are easy to get to and they're accessible. And they're not banned. They're regulated and properly so. Donation bins are closed, and you can see through the picture of ours. You can't get into a donation bin. It's just for clothes and shoes, right? It's just clothes and shoes. And the bin itself is the speech, is the charitable speech. It says, we provide donation for clothes and shoes. It has a little thing on the bottom that talks about what happens to the clothes and shoes. It talks about the 501c3 status as well as where you open it and the chutes as well. So the bin itself is the speech that we have here. So if there is an issue that the city doesn't have to ban them, they can certainly regulate them. And that's something that Planet Aid and a number of entities like St. Vincent de Paul and Salvation Army and whatnot are more than happy to work with local communities on those issues. Does the court have any additional questions? I have one practical question. There's some general indication in the record that there might be an issue with the fact that this is donation of shoes and clothing that will not then be returned within the community because your model is to take them to other countries. And there seems to be some indication that in the past, donations of clothes and shoes were then recycled to provide minimal cost clothing and footwear for the poor members of that very community. Does that cast any different light on your argument? I mean, does that change the nature of the compelling interest that the government has? Not really because, well, for two reasons. The government's not involved in the clothing and shoe donation. It's a private entity, which is goodwill. But the government is involved in seeing to the needs of its poorer citizens. That's true, but it doesn't provide, at least there's no government. It's not a government service to provide clothing and shoes. And taking that one step further, which is not in the record, but just what the industry is, what goodwill does is it takes clothes and shoes in and other product as well and sells them and then uses that money for it. And goodwill's a franchise. It's a private company and uses that money for the owners of that particular franchise. The clothes and shoes it doesn't sell end up in the same places that the clothes and shoes that Planet Aid gets. It goes either overseas or it's sold, bundled and sold and shredded for car seats or chair seats or whatever the case may be. So, you know, the argument kind of doesn't, it's kind of apples and oranges arguments because it's a private enterprise. It really is, you know, we're taking clothes and shoes in and selling them, but here we're doing the same thing. It's just, you know, it goes to a different area. Sure. The other part I just wanted to clear up with respect to the record is the newspaper articles that are cited in the brief of counsel were not considered by the city when they were passing the ordinance. Those are articles that were brought to a deposition down the road. Those articles were not part of the issue at all. And unless the court has any additional questions, I'll rely on my brief. Thank you, counsel. Thank you. Rebuttal. A couple of points on rebuttal. First, I want to come back to this notion about whether the ban was complete. And I think it's important. There was a lot of discussion in the record about whether there should be a complete ban, and that discussion arose because ordinances in a number of cities in this context and in some other free speech contexts have differentiated between profit-making groups and non-profit-making groups. And so the question before the city's counsel was, do we want to have that kind of a differentiation based upon the nature of the speaker? And they decided, no, we would make this a complete ban. And they did so, I think, correctly, because they thought that would be a more content-neutral, stronger ordinance to pass and would avoid any suggestion that they were differentiating based on the content of the speech or the viewpoint of the speaker, but that they were targeting what they perceived as the problem. Secondly, I think Planet Aid's attorney has conceded, correctly so, that the city's position through the city attorney was and remains that prior to the ordinance the donation bins were an accessory use. They weren't permitted in the circumstance, and that was why the city took the steps it did. That's not really part of the First Amendment analysis. And we know, and we briefed this, the motive in passing an ordinance, the Supreme Court has said numerous times, is not appropriate to look at. I know that in at least one case in this circuit, there has been a very thoughtful dissent about nuanced look at the viewpoint. It seems to me that even taking that nuanced look and looking at the questions that one might ask, you would ask, is the ordinance under-inclusive? Is it intended to suppress a particular view? Does the fit between the means and the end? Is it a tight fit? And it seems to me this ordinance answers all of those questions. It's not under-inclusive. It deals with both profit and non-profit making entities. It's targeted to the specific problem, which is people leaving mattresses and trash and garbage and all sorts of things around outdoor unattended bins, or the bins overflowing and even clothes and shoes being left around. The city, and this is not a huge and wealthy city, when, I mean, opposing counsel says, well, you could regulate, you could license, you could do all these things, all of those come with a very high administrative cost, much more difficult to administer and raise their own problems. So what the city did was it targeted this very precisely to the specific problem in a viewpoint-neutral way, in a non-content-based way, and for that reason we think intermediate scrutiny applies and we think the ordinance passes constitutional muster. Any further questions? Thank you very much. Case will be submitted.